UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GLASSTECH, INC.,

              Plaintiff,

-v-

MICHAEL FREUND, ET AL.,

              Defendants.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/8/2025

**MEMORANDUM
AND ORDER**

23-CV-6004 (PGG) (HJR)

**HENRY J. RICARDO, United States Magistrate Judge.**

Before the Court is a Motion for Sanctions filed by plaintiff Glasstech, Inc. ("Glasstech") against defendant Pincus Green ("Green"). ECF No. 117. For the reasons described below, Glasstech's Motion is **GRANTED IN PART** and **DENIED IN PART**.

I.    BACKGROUND

    A.    **Factual Background**

This action concerns the ownership of certain shares of Glasstech stock (the "Shares"). In 2013 and 2014, defendant Michael Freund ("Freund") purchased the Shares from his father, who had been a member of Glasstech's board of directors. ECF No. 1 ("Compl.") ¶¶ 28–33. As a Glasstech shareholder, Freund agreed to the terms of the Glasstech Stockholders Agreement, which restricted further transfer of the Shares. See Compl. ¶¶ 25–27, 35.

In June 2023, counsel for Green, who is Freund's former father-in-law, sent a letter to Glasstech asserting that the Shares must be transferred to the trustee of an Israeli trust (the "Trust"). Ex. D to Compl. This letter claimed that the Israeli

1

Supreme Court had determined that Freund purchased the Shares with funds held by the Trust and that the Trust was the rightful owner of the Shares. *Id.* Glasstech then filed this action for a declaratory judgment that any transfer of the Shares from Freund would violate the terms of the Glasstech Stockholder Agreement and would be null and void. *See* Compl. at 15 (prayer for relief). This suit initially named Freund and Green as defendants. The Court later allowed Yaacov Sheinenzon, the trustee of the Trust said to own the Shares, to intervene in this action. ECF No. 71.

Green advised the Court that he intended move to dismiss the complaint for lack of personal jurisdiction. ECF No. 32. The complaint alleged that Green is subject to personal jurisdiction under N.Y. C.P.L.R. § 302(a), which provides for the exercise of personal jurisdiction, *inter alia*, over a defendant who commits a tort within the state or who commits a tort outside the state causing injury within the state if certain other requirements are met. Because Glasstech did not allege that Green committed a tortious act within the state,[1] Green argued that Glasstech must allege that Green "expressly aimed or intentionally caused an effect in this forum" to satisfy the requirements of Section 302(a). ECF No. 32 at 2.[2]

In opposition to Green's pre-motion letter, Glasstech argued that Green was subject to personal jurisdiction because he transacted business in New York, either

---

[1] As Glasstech often mentions, Green fled the United States decades ago under indictment for tax fraud and violation of sanctions against Iran. *See*, *e.g.*, ECF No. 35 at 1.

[2] All citations to page numbers for documents filed on the electronic docket refer to those stamped at the top of each page.

2

directly or through Freund as his agent, on the theory that (i) Freund purchased the Shares in New York using funds supplied by Green, (ii) Green transferred funds to New York for the express purpose of purchasing the Shares, and (iii) Green knew of and approved of Freund's purchase of the Shares in New York.  ECF No. 35 at 3.

On January 24, 2024, the Court directed the parties to "conduct jurisdictional discovery over the next forty-five days," after which the parties were to advise the Court of the results of jurisdictional discovery and whether Green still wished to proceed with his motion to dismiss.  ECF No. 37.  The Court then referred the case to the Honorable James L. Cott for general pretrial supervision.  ECF No. 39.  That referral was reassigned to the undersigned on August 27, 2024.

Months after Judge Gardephe's January 24 Order, the parties still had not completed jurisdictional discovery.  Green appeared for a remote deposition on July 11, 2024.  *See* ECF No. 117 ("Mot."), at 10; ECF No. 122 ("Opp."), at 9.  During the deposition, Green testified that Freund purchased the Glasstech Shares with funds from an "unwritten" trust.  Mot. at 10–11; Ex. 2 to Kaplan 12/4/2024 Decl., ECF No. 118-2.  Although funds used to purchase the Shares were transferred to Freund in New York from Green's personal bank accounts, Green suggested through his testimony that someone other than Green could have authorized these transfers to Freund.  Mot. at 10-11; Ex. 2 to Kaplan 12/4/2024 Decl. at 34–36.

Ninety-four minutes into the deposition, Green became light-headed and Green's counsel ended the deposition, citing health concerns.  *See* Mot. at 10; Opp. at 9.  On August 21, 2024, Green filed a pre-motion letter seeking a protective order

to avoid any future deposition testimony. *See* Mot. at 10; Opp. at 10. In support of that application, Green also submitted *ex parte* a one-page letter from a Swiss physician dated August 16, 2024. *See* Mot. at 10; Opp. at 10.

On September 18, 2024, the Court held a conference regarding Green's application for a protective order. *See* Mot. at 12; Opp. at 11. The Court declined to consider the one-page letter from Green's physician because Green refused to share it with the other parties. ECF No. 92 ("Tr. of 9/18/2024 Conf.") at 22–24. Additionally, the Court stated that, even if it were to consider the physician letter, it would have been insufficient to excuse Green from further deposition testimony. Tr. of 9/18/2024 Conf. at 24. More specifically, the Court noted that the physician letter was unsworn, conclusory, and unsupported by any contemporaneous medical records demonstrating that there had been an examination, specific diagnosis, or treatment at any particular time. *Id.* at 25. Further, the letter provided no information about when Green first contracted his alleged condition, including whether that occurred before his deposition or during the multi-year Israeli litigation that Green apparently prosecuted with great success. *Id.* at 25–26. The Court ruled that Green's deposition must continue and ordered the parties to confer regarding the date(s) and time(s) and any necessary accommodations to address Green's alleged health condition. *See* Mot. at 12; Opp. at 11.

By so-ordered stipulation, the parties agreed that Green's deposition would continue remotely on November 4, 5, and 6, with two hours of deposition beginning at 7:00 a.m. EST each day. Mot. at 8; ECF No. 89 ("Sept. 26 Stip."). Green would

4

testify from his home in Switzerland using a hard copy set of exhibits sent by Glasstech in advance. Mot. at 8; Sept. 26 Stip.

Additionally, by Order dated October 18, 2025, Green was directed to obtain and produce documents showing powers of attorney, authorized signatories, and fund transfers from his bank accounts at Kantonalbank and Reichmuth & Co. ("the Swiss Banks"), which are the personal bank accounts from which funds were transferred to Freund in New York. Mot. at 15; ECF No. 105 ("October 18 Order"). Glasstech sought these documents to cross-examine Green on his suggestion that someone other than Green authorized the fund transfers to Freund. By letters dated November 1, 2024, Green requested copies of his account statements and documents to show who is authorized to sign on behalf of his accounts from the Swiss Banks. Mot. at 15; Ex. 3 to Kaplan 12/4/2024 Decl.

On November 4, 2024 at 6:30 a.m. EST, Green's counsel notified the other parties that Green would be unable to participate in the deposition scheduled to begin at 7:00 a.m. EST that morning. Mot. at 13; Ex. 5 to Kaplan 12/4/2024 Decl.; Opp. at 11. Green's counsel later cancelled the deposition sessions scheduled on November 5 and November 6 as well. Mot. at 13.

Glasstech then filed a pre-motion letter in anticipation of the instant sanctions motion. ECF No. 108. The Court held a pre-motion conference on November 15, 2024, during which Green's counsel advised that he would not sit for a deposition during the jurisdictional discovery period. ECF No. 115 ("Tr. of 11/15/2024 Conf.") at 6; Mot. at 13.

5

## II. LEGAL STANDARDS

Rule 37 provides that when a party fails to obey an order to provide or permit discovery or fails to attend its own deposition, the Court may issue further "just orders" that may include, *inter alia*, prohibiting the disobedient party from introducing certain evidence, striking pleadings in whole or in part, staying proceedings, or dismissing the action. Fed. R. Civ. P. 37(b)(2) (regarding sanctions sought in the district where the action is pending for not obeying a discovery order); Fed. R. Civ. P. 37(d) (regarding sanctions sought for party's failure to attend its own deposition); Fed. R. Civ. P. 37(b)(2)(A) (listing potential sanctions). Rule 37 sanctions must be related to the claim at issue in the ordered discovery. *Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 707 (1982).

In exercising their discretion to impose sanctions under Rule 37, courts in this circuit are guided by the following factors: "(1) the willfulness of the non-compliant party or the reason for non-compliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance; and (4) whether the non-compliant party had been warned of the consequences of noncompliance." *S. New England Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 144 (2d Cir. 2010) (quoting *Agiwal v. Mid Island Mortg. Corp.*, 555 F.3d 298, 302 (2d Cir. 2009)). Because the text of the rule requires only that the orders be "just," and because a district court has "wide discretion in imposing sanctions under Rule 37," these factors are not exclusive, and they need not each be resolved against the party to be sanctioned. *Shcherbakovskiy v. Da Capo Al Fine, Ltd.*, 490 F.3d 130, 135 (2d Cir. 2007) (internal

quotation marks omitted). *See, e.g.*, *Daval Steel Prods. v. M/V Fakredine,* 951 F.2d 1357, 1366 (2d Cir. 1991).

Further, when a party fails to attend its own deposition, "[i]nstead of or in addition to these sanctions, the court must require the party failing to act, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(d)(3). Rule 37(d)(3) "place[s] the burden on the disobedient party to avoid expenses by showing that his failure is justified or that special circumstances make an award of expenses unjust." *Novak v. Wolpoff & Abramson LLP*, 536 F.3d 175, 178 (2d Cir. 2008) (quoting Fed. R. Civ. P. 37 advisory committee's note (1970 amendment)). "Moreover, courts and commentators alike have held that the provision 'requires the award of expenses' unless the disobedient party meets that burden." *Novak,* 536 F.3d at 178. "Conduct is substantially justified if there was a genuine dispute or if reasonable people could differ as to the appropriateness of the contested action." *Klein v. Torrey Point Grp., LLC*, 979 F. Supp. 2d 417, 442 (S.D.N.Y. 2013). "Reasonable fees may include attorney's fees and costs in connection with filing a motion for sanctions." *Burks v. Stickney*, 837 F. App'x 829, 832–33 (2d Cir. 2020) (citing *John Wiley & Sons, Inc. v. Book Dog Books, LLC*, 298 F.R.D. 145, 151 (S.D.N.Y. 2014)).

### III.   DISCUSSION

Glasstech seeks sanctions for Green's failure to appear for deposition and his failure to comply with the Court's September 18 and October 18 Orders requiring

7

Green to appear for his deposition and to request and produce certain documents from the Swiss Banks. In opposition, Green argues that his nonappearance was due to a medical condition and was therefore not willful, and he disputes that he failed to produce documents because "[h]e cannot produce what he does not have." Opp. at 13, 18. Green further argues that he was not warned that sanctions could be imposed due to non-compliance with discovery demands. Opp. at 13.

### A. Sanctions Are Warranted

#### 1. Sanctions Are Warranted for Green's Failure to Appear at the November Deposition

Rule 37(d) establishes sanctions that may be imposed on a party when the party fails to appear for a deposition. "'Failure to appear' is strictly construed in this Circuit and only occurs where a deponent 'literally fails to show up for a deposition session.'" *Salahuddin v. Harris*, 782 F.2d 1127, 1131 (2d Cir. 1986) (quoting *SEC v. Research Automation Corp.*, 521 F.2d 585, 588–89 (2d Cir. 1975)).

The parties stipulated and the Court ordered that Green's continued deposition be taken remotely on November 4, 5, and 6. *See* Sept. 26 Stip. Green did not show up to the remote deposition on any of these days. Thus, he literally failed to appear for his deposition and did so in violation of a court order. Green's conduct weighs in favor of a finding of willfulness given his prior application for a protective order, which was denied, and his opportunity to negotiate conditions under which the deposition could continue. Additionally, Green's failure is ongoing in duration because he stated unequivocally that he would never appear to complete his deposition. Tr. of 11/15/2024 Conf. at 6.

8

Green argues that his failure was substantially justified by the sudden onset of "well-documented and well-witnessed health concerns." Opp. at 12. Green argues that the health problems are "documented in two separate letters from two separate doctors" who both opined that "sitting for a deposition poses a great risk to [Green's] health." Opp. at 10. For the reasons described below, Green fails to substantiate his claim that poor health justifies his not appearing for deposition or undermines his willfulness in doing so.

In August 2024, Green sought a protective order to avoid sitting for deposition. ECF No. 78. The Court denied the protective order on September 18, 2024, concluding that he had not presented sufficient evidence that he suffered from a medical condition preventing him from sitting for a deposition with additional accommodations. ECF No. 85 ("September 18 Order"). At that conference, the Court cited decisions describing the high burden that must be met to excuse a party from being available for deposition. Tr. of 9/18/2024 Conf. at 19–20.[3] Additionally, the Court described why the one-page physician letter that Green submitted *ex parte* fell short of this high standard. For example, the letter was unsworn and was not supported by any contemporaneous medical records demonstrating that there had been an examination or a specific diagnosis at any particular point in time.

---

[3] *See Michelo v. Nat'l Collegiate Student Loan Tr. 2007-2*, No. 18-CV-1781, 2020 WL 4041058, at *2 (S.D.N.Y. July 17, 2020) (a prohibition against taking a deposition is very unusual and the proponent of such an order bears a heavy burden), *objections overruled*, 2021 WL 568124 (S.D.N.Y. Feb. 16, 2021) (Gardephe, J.); *Qube Films Ltd. v. Padell*, No. 13-CV-8405, 2015 WL 109628, at *2 (S.D.N.Y. Jan. 5, 2015) (good cause to avoid a deposition requires showing that clearly defined, specific and serious injury will occur); *In re McCorhill Publishing, Inc.*, 91 B.R. 223, 225 (Bankr. S.D.N.Y. 1988) (precluding deposition based on physician testimony that was subject to cross-examination).

9

Further, the letter failed to describe when the medical condition was first identified and what its progress had been. *Id.* at 24–27.

At no point after the September 18 discovery conference did Green renew his request for a protective order by presenting satisfactory evidence of his medical condition. Further, during the November 15, 2024 pre-motion conference, the Court reminded Green of the "very high burden that's required for a litigant not to be required to sit for deposition" and suggested that disclosure of complete medical records over some time period might be appropriate. Tr. of 11/15/2024 Conf. at 18–19.

Despite being on notice of the robust proof the Court would require to be persuaded that Green's failure to appear was justified, the only evidence that Green provides in opposition to Glasstech's motion is another one-page letter, dated November 15, 2024, stating that Green's participation in a deposition would exacerbate stress. Ex. 10 to Kaplan 12/4/2024 Decl., ECF No. 118-10; Mot. at 13–14; Opp. at 11. This November 15 letter appears to be from a doctor in the same medical practice as Green's first doctor. Like the August doctor letter submitted *ex parte*, the November doctor letter is unsworn, unsupported by any medical records, and it provides a conclusory opinion that Green cannot sit for a continued deposition. Ex. 10 to 12/4/2024 Kaplan Decl. While mentioning "tests" said to confirm Green's condition, the letter does not specify what tests were performed or what the results were. Ex. 10 to Kaplan 12/4/2024 Decl. The letter refers to current symptoms attributable to "known" disease, but it provides no information about

when such disease was first diagnosed, including whether Green's condition existed during the lengthy Israeli litigation that he successfully prosecuted or whether it first occurred only after initially appearing for a deposition in this case. *Id.* This letter does not support a finding that Green's failure to appear at his deposition was substantially justified or not willful.

Green's argument that monetary sanctions would be unjust because it would be a penalty "for nothing more than having serious health problems," Opp. at 16, is also unpersuasive. As discussed above, Green has not provided sufficient evidence to demonstrate that he suffers from a documented medical condition that makes it dangerous for him to sit for a deposition, to be taken two hours at a time from the comfort of his home. He has failed to do so despite being on notice as to the type of proof that would be required. This failure of proof is particularly striking given that Green is a man of considerable means who ably litigated in Israeli courts when it served his interests to do so. Green's reliance upon a conclusory one-page letter speaks volumes.

Additionally, while Green argues that the imposition of sanctions would be unjust because Green was not warned that failure to comply with a court order would result in sanctions, "the Second Circuit has explained . . . that parties do not have an absolute entitlement to be 'warned' that they disobey court orders at their peril, . . . particularly where, as here, the non-compliant party is represented by counsel." *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 673 F. Supp. 3d 345, 362 (S.D.N.Y. 2023) (quoting *Daval Steel Prods.*, 951 F.2d at 1366)

11

(cleaned up). Further, Glasstech incurred expenses and attorney's fees to prepare for the deposition that Green failed to attend, as well as to prepare the instant motion. Green's agreement "to compensate Plaintiff for the costs associated with the deposition," Opp. at 16 n.7, is an acknowledgment that at least some monetary sanction is just in this case. Green has not demonstrated substantial justification for his failure to attend the remote deposition on November 4, 5, and 6 in violation of a court order or that imposing sanctions would otherwise be unjust.

### 2. Sanctions Are Warranted for Green's Failure to Produce Documents

Rule 37(b) sanctions may be imposed when there is both (1) a "court order directing compliance with discovery requests," and (2) "non-compliance with that order[.]" *Shanghai Weiyi Int'l Trade Co. v. Focus 2000 Corp.*, No. 15-CV-3533, 2017 WL 2840279, at *9 (S.D.N.Y. June 27, 2017).

Following a conference with the parties, the Court's September 18, 2024 Order required Green "to produce any powers of attorney executed in connection with" Green's accounts at the Swiss Banks, "documents showing the authorized signatories" for those accounts, and required the parties to meet and confer regarding the production of wire transfer records. *See* September 18 Order. After a further conference, on October 18, 2024 the Court ordered Green to produce powers of attorney, documents showing authorized signatories for his bank accounts, and "all documents regarding fund transfers from Defendant Green to Michael Freund" for certain investments, including the Shares. *See* October 18 Order. This October 18 Order specifically directed Green to "take steps to obtain documents within his

12

control, including by making written requests for such documents from the banks at which he holds accounts, and either produce the relevant documents within his control or affirm that there are no such additional documents in his control." *Id.*

On November 1, 2024, Green sent written requests for authorized signatories and account statements to the Swiss Banks. Ex. 13 to 12/4/2024 Kaplan Decl. Notably, Green's requests failed to mention documents regarding fund transfers, which would include any instructions initiating transfers. These documents would show who authorized such transfers, which is unlikely to be reflected in periodic account statements. As of the date of Glasstech's motion, Green had not produced any documents from the Swiss Banks regarding authorized signatories and wire transfer records, and Green has not submitted any sworn document affirming that no such documents exist within his control. Mot. at 16. Green, through his counsel, merely states in his opposition that he "has produced every responsive document in his possession, custody, and control responsive to Glasstech's discovery demands, and has complied with the Court's Order to request any additional documents from the banks." Opp. at 10.

Green's requests to the Swiss Banks failed to comply with the Court's October 18 Order because Green did not ask the Swiss Banks for wire transfer records. Nor is there any indication that Green took any steps to follow up on these requests. Green has not produced any documents that he obtained as a result of these requests and has not affirmed that no such documents exist, as required by the Court's October 18 Order. Green thus failed to comply with the requirements of

13

the September 18 and October 18 Orders. And even Green's partial attempts to comply with the Orders, approximately two weeks after the October 18 Order and over nine months into jurisdictional discovery that was originally ordered to take place for just forty-five days, *see* ECF No. 37, unnecessarily delayed the progress of this action. *Cf. Anhui Konka Green Lighting Co. v. Green Logic LED Elec. Supply, Inc.*, No. 18-CV-12255, 2020 WL 5743518, at *3–5 (S.D.N.Y. Sept. 25, 2020) (imposing monetary sanctions on parties that unjustifiably delayed responding to document requests).

### B. Appropriate Sanctions

Glasstech seeks an order: (1) shifting the burden of proof to Green to establish that he is not subject to personal jurisdiction; (2) precluding Green from submitting an affidavit or sworn statement from himself or any of his representatives in support of a motion to dismiss for lack of personal jurisdiction; (3) deeming as true Glasstech's allegations that Green had control over his accounts at the Swiss Banks and had knowledge of and authorized the fund transfers from the Swiss Banks to New York to purchase the Investments; and (4) awarding monetary sanctions to Glasstech in the amount of reasonable expenses and attorney's fees incurred in connection with the present motion and Green's cancelled deposition. Mot. at 3.

The Court declines to shift the burden of proof to Green to demonstrate that he is not subject to personal jurisdiction. This remedy goes too far and is not narrowly-tailored to combat the prejudice that Glasstech has suffered. However, the Court finds that other requested sanctions are appropriate and reasonably

14

calibrated to address the prejudice caused by the particular discovery that Green failed to provide, *i.e.*, to appear for the rest of his deposition and to seek certain documents from the Swiss Banks.

Green is barred from submitting any sworn declaration or affidavit by himself or his representatives in support of a motion to dismiss for lack of personal jurisdiction. Green's failure to appear at his scheduled deposition deprived Glasstech of a fair opportunity to cross examine him about whether he engaged in purposeful conduct directed to New York, including whether he personally authorized the transfer of funds to Freund in New York. These are facts uniquely within Green's personal knowledge and there is no substitute for his deposition testimony on these matters.[4] In light of this failure, it would be unfair for Green to offer self-serving testimony in support of his motion. For example, Green should not be permitted to offer an affidavit to show that someone else authorized the transfer of funds from his account to New York or that this conduct is not attributable to Green personally.[5] In opposition to the motion, Green does not

---

[4] Green has suggested that responses to written interrogatories should be sufficient. The Court already rejected this option during the September 18 discovery conference. After independently reviewing Green's deposition transcript, the Court found that "cross-examination is important here" because Green "is a careful witness" who is "very attuned to any potential ambiguity in the questioning and knows what a careful witness does in those situations." Tr. of 9/18/2024 Conf. at 22. Thus, "cross-examination here is essential to get to the bottom of things." *Id.* Green's opposition to the sanctions motion does not present any reason to change this earlier conclusion.

[5] Green appears to contend that this fund transfer was not attributable to him personally because he was acting on behalf of the Trust. This might not be a winning personal jurisdiction argument. *See Matchroom Boxing Ltd. v. Feldman*, No. 22-CV-8178, ECF No. 62 at 15 (S.D.N.Y. Sept. 30, 2024) (Gardephe, J.) (observing that New York has abandoned the fiduciary shield doctrine and that courts can obtain jurisdiction over a corporate officer or employee based upon his contact with New York even if these activities

15

identify any other subject that he plans to address by affidavit in support of his motion to dismiss.

Additionally, Green is deemed to have known of and authorized any transfers of funds from his Swiss Bank accounts that were used to purchase the Shares. This is hardly a radical finding: in the ordinary course, Green presumptively would be responsible for transactions conducted in his personal bank accounts. But Glasstech is entitled to such a finding here because, in the short time during which he was questioned, Green suggested that unnamed persons could have transferred funds from his accounts without his personal authorization. The deposition was terminated shortly after Green provided this self-serving testimony. Additionally, Green failed to comply fully with the Court's Orders to seek relevant documents from the Swiss Banks. Green's failure to complete his deposition and to make the required requests of the Swiss Banks placed Glasstech at an unfair disadvantage: Green had placed into the discovery record a speculative suggestion that someone other than Green authorized transfers from his accounts, but then deprived Glasstech of the opportunity to test that assertion through discovery. Accordingly, Green should not be permitted to argue in support of his motion to dismiss that he was unaware of and did not authorize transfers from his Swiss Bank accounts.

Finally, Green must pay Glasstech and Freund's attorney's fees and costs for the time spent preparing for the continued deposition that was scheduled to occur

---

were performed solely in a corporate capacity). But this Order does not address the merits of Green's motion to dismiss. Instead, this Order considers whether Glasstech was denied a fair opportunity to test Green's contentions through jurisdictional discovery, regardless of whether Green's legal theory is ultimately viable.

16

on November 4, 5, and 6, and preparing the instant motion, the amount of which will be determined by separate motion for attorney's fees and costs. To be clear, it is Green, not his counsel, who must pay these fees and costs. While the Court concludes that Green has engaged in sanctionable conduct, it makes no such finding as to Green's counsel.

## IV.   CONCLUSION

The Clerk of Court is respectfully directed to terminate Glasstech's Motion for Sanctions, ECF No. 117, as **GRANTED IN PART** and **DENIED IN PART**.

Counsel for Glasstech and Freund may file separate motions for attorney's fees and costs by **July 25, 2025**. Green's opposition, which may address only the reasonableness of the fees and costs sought, is due by **August 8, 2025**. Glasstech's and Freund's replies are due by **August 15, 2025**.

**SO ORDERED.**

Dated: July 8, 2025
       New York, New York

Henry J. Ricardo
United States Magistrate Judge